Cornelius **COOPER**, Michael Edwards, Charcella Green, Patricia Harris, Sarah Jean Harris, Irene McCullers, and Carolyn Wilson, Plaintiffs,

v.

**SOUTHERN COMPANY,** Georgia Power Company, Southern Company Services, Inc., and Southern Company Energy Solutions, Inc., Defendants.

Civil Action No. 1:00–CV–2231–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

March 31, 2003.

R. Lawrence Ashe, Jr., Nancy E. Rafuse, Susan Elisabeth Himmer, Paul, Hastings, Janofsky & Walker, Atlanta, GA, for Movant.

Michael B. Terry, Joshua F. Thorpe, Steven Rosenwasser, Bondurant, Mixson & Elmore, Atlanta, GA, J. Keith Givens, Angela Joy Mason, Cochran, Cherry, Givens, Smith & Sistrunk, Dothan, AL, Hezekiah Sistrunk, Jr., Cochran, Cherry, Givens, Smith & Sistrunk, Atlanta, GA, Jock Michael Smith, Cochran, Cherry, Givens & Smith, Tuskegee, AL, Johnnie L. Cochran, Jr., Cochran, Cherry, Givens & Smith, Los Angeles, CA, Johnnie L. Cochran, The Cochran Firm, Schnieder, Kleinick, Weitz, Damashek, et al, New York City, for Plaintiffs.

W. Ray Persons, King & Spalding, Richard Gerakitis, Stephen William Riddell, Charles A. Hawkins, Frederick Cobb Dawkins, Ashley Zeiler Hager, Sheldon W. Snipe, Troutman Sanders, Eric Jon Taylor, Walter Christopher Arbery, Kelly D. Ludwick, Hunton & Williams, Atlanta, GA, for Defendants.

## ORDER

ORINDA D. EVANS, Chief Judge.

This civil matter alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. § 1981 is presently before the Court on all Defendants' motion for summary judgment on the individual claims of Plaintiff Cornelius Cooper. For the reasons set forth below, Defendants' motion is GRANTED.

1. Defendants The Southern Company ["TSC"], Southern Company Energy Solutions, Inc. ["SCES"], and Southern Company Services ["SCS"] move for summary judgment on the grounds that Plaintiff has never been employed by nor did he ever apply for positions at TSC, SCES, or SCS. Plaintiff has failed to respond to SCES's motion and is deemed to have abandoned his claim against SCES. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001).

A plaintiff must be an "employee" to bring a Title VII lawsuit. *Llampallas v. Mini–Circuits, [Lab,] Inc.*, 163 F.3d 1236, 1242 (11th Cir.1998). An "employee" for Title VII purposes is an "individual[ ] who receive[s] compensation from an employer." *Id.* at 1243. An "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). The analysis of whether a party is an employer appears to be the same under Title VII and § 1981. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (noting that these statutes have the same requirements of proof and use the same analytical framework); *Richard v. Bell Atlantic*

## I. Facts

The following facts are undisputed except as indicated otherwise. Plaintiff has worked exclusively for Defendant Georgia Power Company ["GPC"] since 1973.[1] Since approximately October 1996, Plaintiff has been assigned to work on a two-man team as a lineman performing underground streetlight cable repairs. Since approximately October 1996, Plaintiff has not worked on a line crew nor worked on overhead lines as part of his regular job responsibilities.

In July 1998, GPC's Lighting Services Business Unit ["LSBU"] posted openings for two Lighting Coordinator positions on JobNet, Defendants' internal job posting program. Lighting Coordinators are responsible for supervising and overseeing the installation of outdoor lighting systems performed by teams of independent contractors. Lighting Coordinator duties in-

*Corp.*, 946 F.Supp. 54, 61 n. 2 (D.D.C.1996); *Sargent v. McGrath*, 685 F.Supp. 1087, 1089 (E.D.Wis.1988); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 n. 3 (E.D.N.Y.1994). Thus, Plaintiff has standing to sue TSC only if it can be shown that TSC constituted an "employer" from whom Plaintiff received compensation.

It is undisputed that TSC is a holding company which owns the stock of all other Defendants named in the complaint but has no employees. Womack Aff. ¶ 9. Plaintiff asserts that Defendants, including TSC, created SCS as a company-wide human resources department and use SCS's "extensive involvement in personnel policy-making and employee selection processes" to maintain "substantial involvement in GPC's personnel decisions." Plaintiff fails to point to any facts in the record to support these allegations; however, even if this were true, it is irrelevant with respect to Plaintiff's claims. Plaintiff has failed to provide evidence that any SCS employees were involved in any allegedly discriminatory acts. *See Wood v. Southern Bell Telephone and Telegraph Co.*, 725 F.Supp. 1244, 1249–50 (N.D.Ga.1989). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to TSC, SCES and SCS.

clude managing sales orders for installations of new outdoor lighting units through completion of an installation project, checking the construction specifications and materials list for an installation project, scheduling installation project work, managing and overseeing the work performed by contractor crews, resolving problems that arise on the site, and reviewing the bills submitted from the contractors.

LSBU Sales Manager Mike Clay was the hiring manager responsible for selecting individuals to interview from among the applicants for the July 1998 Lighting Coordinator openings, as well as deciding which individuals would be offered the two positions. There were over fifty applicants, including Plaintiff, who applied for the two positions. Plaintiff was not among those selected to interview for the Lighting Coordinator positions.

Clay made the final decision on whom to offer the two Lighting Coordinator positions and selected Donald Callihan and Gene Edwards to fill the two Lighting Coordinator positions. Both Callihan and Edwards initially accepted Clay's offer to fill the Lighting Coordinator positions. Less than one week after he accepted the position, Callihan changed his mind and turned the offer down, leaving one of the two positions open.

Between the time Callihan and Edwards were offered the Lighting Coordinator positions and when Callihan turned the offer down, a new Operations Manager, Ken Leonard, was hired to oversee the Lighting Coordinators in the LSBU. Leonard assumed the responsibility for filling the one open Lighting Coordinator position. To determine who would be interviewed for this position, Leonard reviewed the list of candidates whom Clay had initially selected for interviews and discussed these candidates with Clay. Out of the previous pool of nine interviewees, Leonard decided to interview Ronnie Turner and Glen Hicks. Leonard also decided to interview two candidates, Frank Gilliam and Duane Johnson, who had not previously applied or interviewed for the position but who subsequently personally expressed interest in the position to Leonard. Leonard did not consider Plaintiff for an interview because Leonard had decided not to interview any of the approximately forty-seven applicants who were not initially selected for an interview by Clay. Leonard decided to offer the position to Turner. Turner declined the Lighting Coordinator position when Leonard offered it to him, so Leonard next offered the position to Hicks. Hicks accepted the offer and became a Lighting Coordinator.

In August 1998, Training Manager F.R. Howard posted six openings for Power Delivery Specialists (now known as "Methods & Training Specialists" or "Trainers") at GPC's Training Center. Trainers provide hands-on training to line crew employees in current safety and job-related skills necessary for lineman work. Openings for Trainer positions usually attract a large number of qualified applicants, including crew leaders, foremen and linemen. As the hiring manager for the six Trainer positions, Howard was responsible for selecting applicants to interview and deciding who to hire for these positions. Approximately eighty-seven individuals, including Plaintiff, applied for the six open positions. Howard selected fourteen applicants to interview for the six available positions. Plaintiff was not among the fourteen candidates Howard selected for an interview.

This action was filed on July 27, 2000. In the complaint, Plaintiff alleges that Defendants discriminated against him by subjecting him to a hostile work environment and by improperly denying Plaintiff promotions.

## II. *Defendants' Motion for Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendant] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail in their motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on Defendants' motion, the Court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

As an initial matter, all of Plaintiff's Title VII claims must be dismissed as untimely. In order to assert a claim under Title VII, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission ["EEOC"]. 42 U.S.C. § 2000e–5(e)(1); *Stewart v. Booker T. Washington Ins.,* 232 F.3d 844, 848 (11th Cir.2000). Any claims under Title VII based on alleged events that occurred more than 180 days before the filing of an EEOC charge are barred by the applicable statute of limitations. 42 U.S.C. § 2000e–5(e)(1); *Stewart,* 232 F.3d at 848. Plaintiff did not file an EEOC charge himself but apparently intends to "piggy-back" on the EEOC charge filed on July 21, 2000, by co-plaintiff Michael Edwards. Because none of the acts about which Plaintiff complains occurred on or after January 24, 2000, Plaintiff fails to state a claim under Title VII.

Nor can Plaintiff state a claim under Section 1981 based on alleged events that occurred more than two years before the filing of this lawsuit, or before July 28, 1998. *Hill v. Metropolitan Atlanta Rapid Transit Auth.,* 841 F.2d 1533, 1546 (11th Cir.1988) (recognizing two-year statute of limitations for section 1981 claims filed in federal court in Georgia). The only allegations Plaintiff now maintains which are timely under Section 1981 are (1) his claim that he was denied a promotion to a Lighting Coordinator position in July 1998 and (2) his claim that he was denied a promotion to a Trainer position in August 1998.

Section 1981 provides a cause of action only for claims of intentional discrimination. *See Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 472 (11th Cir.1999). Under Section 1981, an employer may be found liable for unlawful discrimination under either of two discrete theories: disparate treatment discrimination or pattern and practice discrimination. *EEOC v. Joe's Stone Crab,* 220 F.3d 1263, 1273 (11th Cir.2000). Both theories require proof of discriminatory intent. *Id.* at 1273.

To establish a prima facie case of race discrimination under a disparate treatment theory, Plaintiff may offer either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alexander v. Fulton County, Ga.,* 207 F.3d 1303 (11th Cir. 2000). If the plaintiff presents direct evidence of discrimination, the defendant is then required to prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination.

To make a prima facie case using circumstantial evidence, a plaintiff may use the test established in *McDonnell Douglas.*[2] A plaintiff may establish a prima facie case by demonstrating 1) that he belongs to a protected class; 2) that he was qualified for and applied for the job; 3) that he was rejected; and 4) that others who were not members of the protected class were promoted. *Denney v. City of Albany,* 247 F.3d 1172, 1183 (11th Cir. 2001); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997).

If the plaintiff provides sufficient circumstantial evidence to support a prima facie case, a legal presumption of unlawful discrimination arises and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817. The defendant's burden is "exceedingly light" and is "one of production, not proof." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the defendant satisfies its burden, the presumption of discrimination is eliminated and the plaintiff must be given an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant is a pretext for discrimination. *Id.*

A plaintiff may also use statistical evidence to establish either a prima facie case of discrimination or pretext. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 952 (11th Cir.1991). Statistics may be used to establish an individual plaintiff's claim that a pattern or practice of discrimination existed, or simply to bolster the plaintiff's circumstantial evidence of individual disparate treatment. Under the pattern and practice theory, the plaintiff must provide evidence sufficient to establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). Even if the statistical evidence is insufficient to meet this standard, evidence establishing a discriminatory pattern "is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." *Parker v. Burnley,* 693 F.Supp. 1138, 1153 (N.D.Ga.1988) (internal quotation marks and citation omitted). Whether the plaintiff argues that the statistical evidence supports a pattern or practice claim or simply constitutes evidence of disparate treatment, "[t]he ultimate inquiry remains whether the plaintiff has demonstrated that the defendant *intentionally* discriminated in refusing to enter into a contractual relationship." *Brown v. American Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir.1991) (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987)).

### A. Disparate Treatment

#### 1. Hostile Work Environment

In the complaint, Plaintiff alleges that Defendants discriminated against him when he was repeatedly subjected to offensive comments about his race. Third Amended Complaint ¶ 72. Defendants contend that Plaintiff abandoned this claim prior to Defendants' motion for summary judgment. Plaintiff does not respond to this argument and thus is deemed to have abandoned this claim. Defendants are therefore entitled to summary judgment on this claim. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern*

---

**2.** The *McDonnell Douglas* standard for a prima facie case is applicable in employment discrimination suits brought under 42 U.S.C. § 1981. *Sledge v. Goodyear Dunlop Tires North America, Ltd.,* 275 F.3d 1014 (11th Cir. 2001).

*Ry. Co.,* 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001).

### 2. *Promotion Discrimination*

Plaintiff also alleges that Defendants discriminated against him by improperly denying him promotions. Plaintiff contends that Defendants discriminated against him when white applicants were promoted over Plaintiff to a Lighting Coordinator position in July 1998 and to a Trainer position in August 1998. Plaintiff further alleges that he has been treated differently than the following individuals because of his race: Rick Mondy, Leonard Fletcher, Danny Sly, Davis Sutton, Darrell Wright, Bo Smith, and Joe Brown Lee.

*Lighting Coordinator*

■ Defendants do not dispute that Plaintiff can establish a prima facie case with respect to this position but argue that Plaintiff cannot overcome their asserted non-discriminatory reasons for the decision not to hire Plaintiff.[3] According to Defendants, after the application period closed, Clay received a computer-generated list of approximately 55 individuals who applied for the position through JobNet. Clay Dec. ¶ 7. Clay also received a computer-generated candidate profile for each applicant that listed the applicant's employment history with Defendants and, if submitted by the applicant, a statement of why the applicant believed that he was qualified for the position. *Id.* Clay, with the assistance of LSBU Operations Manager Lisa Meyers, reviewed all of the applicants' qualifications listed on the candidate profiles in order to select qualified applicants to interview for the openings. Clay based the interview selections on criteria they determined were relevant for the job, including a minimum of two years experience in power delivery; demonstrated strength in communication, initiative, leadership, and teamwork skills; and preferred experience in contract administration and supervising contractors. In deciding whom to interview, Clay considered the qualifications described on the applicants' candidate profiles as well as any personal knowledge they possessed concerning applicants' qualifications and any recommendations for the applicants they had received from managers, supervisors, or other employees.

Nine applicants were selected to interview for the two open positions: Gene Edwards, Glen Hicks, Ronnie Turner, Anthony Paramore, Pete Camp, Harry Lindsey, Perry Craig, Jimmy Jones, and Donald Callihan. In making his interview decisions, Clay first ruled out any applicant whose candidate profile did not indicate that the applicant had power delivery experience. Clay Dec. ¶ 10; Clay Dep. at 24, 103. Clay then selected all of the applicants who had served as a foreman because Clay believed that those individuals had demonstrated initiative, communication skills, and leadership skills and it was likely that these candidates had knowledge of contract administration and experience supervising contractors. Clay Dec. ¶ 10. Other applicants were granted interviews if the applicant had power delivery experience and either (1) Clay or Meyers knew the applicant's qualifications personally, (2) Clay received a recommendation for the applicant, or (3) the applicant demonstrated initiative by expressing special interest in the position to Clay or other LSBU employees in gaining knowledge of the duties of the Lighting Coordinator position. Clay Dec. ¶ 11; Clay Dep. at 25, 35–37, 45, 65, 74.

Clay contends that he did not select Plaintiff for an interview because Clay did

---

**3.** Although Defendants state that Plaintiff "cannot" establish a prima facie case, *see* Def. Mot. S.J. at 19, they fail to make any argument to support this position.

not glean from Plaintiff's application that Plaintiff had initiative, communication skills, leadership skills, knowledge of contract administration, or experience supervising contractors. To the best of Clay's knowledge, Plaintiff had never worked as a foreman, had not demonstrated any initiative or special interest in the position by seeking out Clay or other members of the LSBU, nor had Clay received any recommendations on Plaintiff's behalf. Clay Dec. ¶ 16; Clay Dep. at 80.

After one of the successful candidates turned down the offer for the position, Leonard interviewed only those candidates who had either (a) applied for the position through JobNet and had been granted an interview by Clay, or (b) actively sought the position by seeking out Leonard to discuss the position. Leonard Dec. ¶¶ 4–5; Leonard Dep. at 18–20. According to Defendants, Leonard sought and received approval from the Human Resources department to consider Gilliam and Johnson for the vacant position. Plaintiff did not fall within either of these two categories and thus was not granted an interview. These reasons constitute legitimate, non-discriminatory reasons for the decision not to hire Plaintiff. *See, e.g., Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir.2001) (that successful candidate possessed the qualities that decisionmaker considered dispositive in choosing among the pool of qualified applicants constituted legitimate non-discriminatory reason); *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir.2000) (that successful candidate was better qualified with respect to three of the four criteria listed in the position application constituted legitimate non-discriminatory reason).

██ In response, Plaintiff attempts to establish pretext by showing that the reasons cited by Defendants were not the actual reasons for the decision not to hire Plaintiff. *See Hill v. Seaboard Coast Line R. Co.*, 885 F.2d 804, 810–11 (11th Cir. 1989) (noting that plaintiff may show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence). Defendants are certainly entitled to employ subjective criteria in making a hiring decision. *Murphy v. Yellow Freight System, Inc.*, 832 F.Supp. 1543, 1548 (N.D.Ga. 1993) ("The use of subjective factors in making employment decisions cannot be sufficient to support a finding of discrimination."). The proper pretext analysis is whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997) (internal quotation marks and citations omitted).

First, Plaintiff points to Leonard's testimony that most of the criteria considered by Clay—initiative, communication skills, leadership skills, knowledge of contract administration, and experience supervising contractors—cannot be determined from a candidate profile and that it would be unfair to consider an applicant based solely on his profile if the hiring manager was looking for this criteria. Leonard Dep. at 38. However, that Leonard believes it would be unfair to rely solely on the candidate profile when employing the stated criteria does not render Clay's explanation unworthy of credence. Clay testified that he considered not only the candidate profiles, but also the resumes that some of the applicants submitted, the recommendations he received on behalf of applicants, and the initiative displayed by those applicants who contacted him or other LSBU employees directly to learn more about the position.

Plaintiff also contends that Clay's explanation is not credible because Clay testified that at the time he decided who to interview for this position, it was possible that he did not know anything about the communication skills or the contract administration experience of some of the candidates. Clay Dep. at 33, 39, 52, 57–60. Plaintiff contends that this evidence establishes that Clay did not actually consider the stated criteria in deciding whom to interview or that he did not require the white applicants to meet those criteria. However, Clay's testimony that he may not have had information about the specific skills of some of the applicants he selected for interviews does not contradict Clay's explanation of the selection process. Clay testified that he relied on the recommendations received from other managers or LSBU employees to determine whether the applicants he did not know personally possessed strong initiative, communication, leadership, or teamwork skills. Clay Dec. ¶ 11. Further, that Clay may not have had specific information about an applicant's skills in a particular area at the time he determined which applicants to interview does not establish that Clay did not actually consider those qualities. Rather, Clay testified that he considered certain qualifications, such as foreman experience, supervisor recommendations, and an applicant's initiative in contacting Clay, as proxies for some of the specific criteria he used to cull the applicant pool. *Id.* ¶¶ 10, 11, 13.

Plaintiff also attempts to establish that Clay's claim that he selected for interviews those employees for whom he received recommendations is pretext for discrimination. Specifically, Plaintiff points to evidence that there is no written record of any alleged recommendations, that Clay cannot recall the specific details of the recommendations, and that Defendants did not note these alleged recommendations in response to Plaintiff's interrogatories seeking all the reasons Defendants assert to

explain why Plaintiff was not awarded this position. None of these arguments create an issue as to pretext. Plaintiff argues that Clay violated Defendants' selection document processing policy by failing to retain records of the recommendations. However, to support this argument Plaintiff points only to a blank copy of the selection processing document and the applicable instructions, which require that the document be completed with basic information regarding the hiring process. *See* Pla. Resp. to Def. Mot. S.J., Exs. 33, 34. Plaintiff fails to point to any evidence with respect to the actual document reflecting the hiring process at issue or to any evidence that Clay was specifically required to maintain such records. That Clay could not recall during his deposition the specific details of the recommendations received almost four years earlier does not suggest pretext.

Plaintiff also contends that pretext is established by the fact that recommendations Clay received were not performance-based. Plaintiff apparently contends that Clay's claim that he relied on the recommendations in determining who to interview is not worthy of credence because the recommendations were not based on the applicants' performance. Clay Dep. at 27, 47–49, 50–51, 53–55, 65–66, 73. However, Plaintiff mischaracterizes Clay's testimony. The passages to which Plaintiff cites reflect that the recommendations Clay received were general statements regarding an applicant's suitability for the position. That Clay was unable to recall in his deposition the specific relationships between the applicants and the managers or co-workers who recommended them or the recommendations' details does not establish that the recommendations were not based on the applicants' performance. Plaintiff points to no affirmative evidence that the recommendations were based on anything other than performance. That

Clay did not provide detail with respect to the substance of all of the recommendations does not convert his consideration of such into an "informal, secretive and subjective hiring or promotion decision process[ ] tend[ing] to facilitate the consideration of impermissible criteria." *Roberts v. Gadsden Mem. Hosp.,* 835 F.2d 793 (11th Cir.1988).

Plaintiff's contention that Clay's reliance on the recommendations received on behalf of some of the applicants constitutes consideration of a non-disclosed factor creating "leeway" for discrimination also must fail. Plaintiff has pointed to no evidence suggesting that Clay omitted a suggestion for recommendations from the job posting or relied on the recommendations for the purpose of discriminating against black applicants. Nor is there evidence that Clay's reliance on the recommendations constituted a deviation from the standard hiring process. *Compare Hill,* 885 F.2d at 811. That Clay relied on the receipt of the recommendations does not in itself constitute evidence of discriminatory intent and thus does not constitute evidence of pretext. *Compare Bass v. Bd. of Co. Com'rs,* 256 F.3d 1095, 1106 (11th Cir.2001).

Plaintiff also contends that pretext is established by the fact that some of the employees selected for interviews did not meet the minimum qualifications for the job. Plaintiff points to evidence that Harry Lindsey, one of the employees selected for an interview, received a performance evaluation shortly before being interviewed which states that Lindsey's "performance needs improving in ... the way he communicates with his crews and peers," that Lindsey "does not always set effective goals and objectives for himself and his crew members," and that Lindsey "does not always exhibit good listening and comprehension skills." Pla. Resp. to Def. Mot. S.J., Ex. 19 at Q22257–58. However, Lindsey's evaluation is irrelevant because

Clay testified that he did not consider an applicant's seniority or performance evaluations in making the decisions with respect to this position. Clay Dec. ¶ 14. Plaintiff has not presented any evidence to dispute Clay's testimony that he did not consider performance evaluations.

Plaintiff also argues that pretext is established by Clay's violation of Defendants' affirmative action policy. Plaintiff points to evidence that the policy requires "[r]eviewing the qualifications of employees to ensure that minorities ... are given full opportunities for transfers and promotions." Pla. Resp. to Def. Mot. S.J., Ex. 31 at D5779. Plaintiff contends that Clay admitted that he did not attempt to discover anything about Plaintiff's qualifications before making the employment decision. Again, however, Plaintiff has mischaracterized Clay's testimony.

Q. Why didn't you select [Plaintiff] to interview for the position?

A. I don't know specifically about [Plaintiff] why he wasn't chosen. Didn't know him one way or another.

Q. Did you attempt to find anything out about [Plaintiff]?

A. No, I did not. There were a lot of people that applied and we didn't attempt to find out about a lot of them.

Q. So you said a lot of people applied and you didn't attempt to find out anything about a lot of them. Is it fair to say that if you had not received a recommendation for anyone that they would not be considered?

. . . .

A. I don't know if that's fair to say or not.

Q. So if you did not receive a recommendation for a lot of the people

who had applied for the job, how could you ever know what their qualifications are?

A. You know some of the qualifications from the candidate sheets, the profiles and the information you get on there. And that's basically what you know.

Clay Dep. at 99, 100. Clay's testimony indicates that he did not actively seek out information about Plaintiff but relied on the information included in the candidate profile. There is no evidence to suggest that Clay was required to actively investigate each applicant's qualifications and Clay's testimony supports a finding that Clay in fact complied the requirement that he review all the applicants' qualifications.

Plaintiff also attempts to establish pretext by attacking the credibility of Clay's declaration testimony. Specifically, Plaintiff points to Clay's declaration testimony that he relied on several factors and notes that Clay did not articulate these factors in response to requests to identify all such reasons and argues that such discrepancy constitutes evidence of pretext. However, that Defendants did not initially assert every reason justifying their decision with respect to this position does not contradict their later assertions and thus fails to support a finding of pretext.

Plaintiff further claims that he can establish pretext by showing that two of the successful candidates were not more qualified than he was for the position. Specifically, Plaintiff points to Leonard's testimony that he did not have evidence "that would prove that [Plaintiff] was not the most qualified person for that position," Leonard Dep. at 70–71, and the hiring managers' testimony that they did not compare Plaintiff's qualifications to Edwards' and Hicks' at the time of the decision at issue. *Id.* at 50; Clay Dep. at 81–86. Plaintiff also points to evidence that he had more experience than Edwards and Hicks and that Hicks received poor performance evaluations. However, the inquiry at issue is not whether Plaintiff was the most qualified person for the position but whether the decisionmakers actually believed that Plaintiff was not. Plaintiff has provided no evidence to contradict Defendants' evidence on this point. Further, even if Plaintiff could establish that his experience made him more qualified, "[i]n a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. . . . [D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Denney*, 247 F.3d at 1187 (internal quotation marks and citations omitted). Plaintiff's evidence that he had more experience than two of the applicants and that one applicant received a poor performance evaluation certainly fails to meet that standard.

■ Plaintiff has also provided statistical evidence of racial imbalances in Defendants' hiring and promotion practices as evidence of pretext. Specifically, Plaintiff has offered statistical reports to support his claim that Defendants' hiring and promotion practices had a discriminatory effect on black employees. Plaintiff argues that the reports of his expert, Dr. Madden, which find statistically significant disparities in the promotion of black employees relative to white employees, are evidence from which a reasonable factfinder could determine that intentional discrimination occurred. Defendants contend that Plaintiff's generalized statistics are insufficient to support Plaintiff's claims of intentional discrimination.

As the Supreme Court has noted, while statistical evidence may allow the District

Court to "determine ... that the (racial) composition of defendant's labor force is itself reflective of restrictive or exclusionary practices .... such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." *McDonnell Douglas,* 411 U.S. at 805 n. 19, 93 S.Ct. 1817 (internal quotation marks and citation omitted). In this case, Plaintiff's statistical evidence is insufficiently tailored to support his individual claims.

Plaintiff's statistics compare the promotion rate of employees within the same pay grade who perform similar job functions; however, these statistics generally fail to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to hiring decisions. Plaintiff does not provide statistics comparing employees with equivalent work experience in specific job categories or job progressions, or outcomes for those employees, both black and white, who had actually applied for posted positions challenged by Plaintiff. Plaintiff relies instead on a statistical analysis of a company-wide data pool and makes no attempt to narrow the data pool to the locations in which he worked or the positions which he challenges. As this Court noted in the order denying class certification, the probative value of Plaintiff's statistical evidence is therefore highly questionable, in significant part due to the treatment of factors such as experience, education and specific promotion processes. *Cooper v. Southern Company,* 205 F.R.D. 596, 613–14 (N.D.Ga.2001).

The analytical deficiencies of Plaintiff's statistics diminish the probative value of this evidence such that it cannot by itself support a claim of disparate treatment. *See Brown v. American Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir.1991) (holding that summary judgment was appropriate where plaintiff's statistical evidence, which lacked specific analytical foundation and thus failed to show that employer maintained discriminatory intent, was insufficient to establish prima facie case or pretext); *Hawkins v. Ceco Corp.,* 883 F.2d 977, 985 (11th Cir.1989) (holding that plaintiff's statistical evidence failed to establish prima facie case or pretext where evidence failed to make specific analytical comparisons); *cf. James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 330 (5th Cir.1977) [4] (holding that plaintiff's evidence of statistical disparities in hiring, promotion and compensation was sufficient to support claim of intentional discrimination where the employment decisions were based on *completely* subjective criteria).

■ Further, even if Plaintiff had evidence of pretext, Plaintiff cannot not overcome his burden of establishing discriminatory intent because the undisputed evidence shows that the decisionmakers did not know that Plaintiff is black. As noted above, in a section 1981 case, "[t]he ultimate inquiry remains whether the plaintiff has demonstrated that the defendant *intentionally* discriminated in refusing to enter into a contractual relationship." *Brown v. American Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir.1991) (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987)). If the decisionmakers did not know that Plaintiff was black, they could not have intended to discriminate against him on that basis. *Cf. Trotter v. Board of Trustees of the*

---

**4.** This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

*Univ. of Ala.,* 91 F.3d 1449, 1457–58 (11th Cir.1996); *Silvera v. Orange Co. Sch. Bd.,* 244 F.3d 1253, 1262 (11th Cir.2001).

Defendants contend that it is undisputed that none of the individuals who made the hiring decisions concerning the Lighting Coordinator job knew that Plaintiff is black. The race of the applicants was not indicated on the computer generated list of applicants or the candidate profiles that Clay was given after the posting for the Lighting Coordinator position had closed. At the time Clay and Leonard selected candidates to interview, neither Clay nor Leonard knew Plaintiff personally, nor did they know Plaintiff's race. Clay Dec. ¶ 16; Leonard Dec. ¶ 8. Plaintiff attempts to create an issue of fact by pointing to the following evidence: that the decisionmakers had access to Defendants' employee pictorial directory and employee database in which Plaintiff's race is revealed; that the hiring managers could ascertain Plaintiff's race from his name; and that although Clay and Leonard may not have known Plaintiff's race, they relied on the recommendations of others who did know Plaintiff's race. The law is clear that where the decisionmaker relied upon the recommendations of employees and does not conduct an independent evaluation, any racial animus of the other employees is imputed to the decisionmaker. However, Plaintiff has failed to put forward evidence of a racial animus on the part of any of the supervisors making recommendations; moreover, even if Plaintiff could produce it, such evidence in itself is insufficient to establish pretext. Rather, because the hiring managers did not receive a recommendation on Plaintiff's behalf, Plaintiff would also have to show that the supervisors making recommendations on behalf of other workers did so with the intent of injuring Plaintiff because of his race.

Plaintiff also contends that the selection of only white applicants constitutes evidence that the hiring managers used some means to discover Plaintiff's race and made race-based decisions as to which applicants to interview. According to Plaintiff, the statistical probability that only white applicants would be selected for interviews is less than 5%, leaving a greater than 95% chance that the selection process was not race neutral. However, the only evidence Plaintiff submits in support of this argument is an inadmissible expert report. The sum of Plaintiff's evidence only supports a finding that Clay or Leonard could have discovered Plaintiff's race and does not contradict Defendants' evidence that neither Clay nor Leonard actually knew Plaintiff's race at the time they decided which applicants to interview. Plaintiff therefore cannot establish discriminatory intent with respect to hiring decision for this position. Accordingly, Plaintiff's claim with respect to this position must fail.

*Trainer*

■ Defendants contend that they are entitled to summary judgment on this claim because Plaintiff cannot establish that Defendants' asserted non-discriminatory reason for the decision not to hire Plaintiff for this position is pretext for discrimination. In response, Plaintiff contends that he can establish a prima facie case and can demonstrate the Defendants' asserted reasons for the decision not to hire him are pretext.

According to Defendants, the Trainer position requires not only technical expertise and experience but also effective communication skills and the ability to instruct and teach proper methods and techniques. Defendants contend that Howard, the hiring manager for this position, knew Plaintiff through personal experience and determined that Plaintiff did not have the qualifications that Howard was looking for in this position. According to Defendants,

Howard used several non-discriminatory criteria to evaluate those qualifications.

First, Howard determined that Plaintiff had not demonstrated effective communication skills or the depth of knowledge required for the Trainer position on the occasions when Plaintiff served as a guest instructor at the Training Center. Defendants contend that some Screening Committee members had told Howard that they recalled that Plaintiff had trouble drafting wiring switching orders and articulating training instructions to student employees, which indicated a deficiency in the necessary skills for the Trainer job. Howard Dec. ¶ 20; Howard Dep. at 48–49, 87–88, 93.

Howard further contends that he did not believe that Plaintiff had up-to-date knowledge with respect to all facets of line crew work. Howard Dec. ¶ 18; Howard Dep. at 75, 87–88. At the time of his application for this position, Plaintiff had worked exclusively in an underground streetlight cable repair position for almost two years. Pla. Dep. I at 123; Pla. Dep. III at 147–50. Because Plaintiff's position involved only underground repair of streetlight cables, Howard determined that Plaintiff's job functions were not sufficient to maintain sufficient current knowledge in all job-related and safety aspects of underground and overhead line crew work. Pla. Dep. III at 147–50; Howard Dep. at 53–54, 75, 82, 87–88; Howard Dec. ¶ 18. Howard asserts that he was troubled by the fact that Plaintiff's work in underground streetlight cable repair indicated that he had been working as an individual contributor, rather than as a member of a team. According to Howard, Trainers must work very closely with both the students they teach and other trainers and guest instructors, and thus they must have exemplary teamwork skills. Howard Dec. ¶¶ 5, 19; Howard Dep. at 53–54.

Defendants contend that for all of these reasons, Howard decided not to grant Plaintiff an interview for the Trainer position openings which were posted in August 1998. Instead, Howard selected other candidates from the eighty-seven applications he received and ultimately he awarded the positions to James Smith, Joseph Wheeler, Frank Gilliam, Gordy Morris, Duane Johnson, and Harry Lindsey based upon his belief that these individuals were the most qualified candidates for the job. Howard contends that he and the Selection Committee determined that each of these candidates had superior job knowledge and experience, personal development, communication skills, teamwork skills, personal initiative, safety skills, cooperation skills, customer focus, and innovation. Howard Dec. ¶¶ 22, 25.

In response, Plaintiff attempts to establish pretext by arguing that Defendants' reasons are not credible because Plaintiff actually superior qualifications. First, to establish that he had adequate job knowledge and experience, Plaintiff points to evidence that one of Defendants' employees recommended Plaintiff for a Trainer position in 1992. Plaintiff also points to the testimony of Willard Bell, his direct supervisor, that Plaintiff meets and in some cases exceeds expectations with respect to specific skills in the performance of his job and to his performance evaluation as evidence that Plaintiff actually possessed up-to-date knowledge of his job.

Plaintiff also challenges Defendants' assertion that he was not qualified for the Trainer job because he did not have sufficient skills in overhead lines. Plaintiff contends that because Howard indicated that they would have accepted Plaintiff as either an underground or overhead trainer had he been offered a position, that the successful applicant only needed skills in overhead or underground lines. Howard

Dep. at 88–89. However, that Defendants were filling both underground and overhead Trainer positions does not support a finding that Defendants did not believe that a successful applicant needed up-to-date knowledge of both types of work.

Plaintiff also points to Howard's testimony that he did not actively investigate in August 1998 whether Plaintiff's job duties required him to use updated systems or whether Plaintiff had such updated knowledge. Howard Dep. at 83, 156–57. However, Howard testified that, based on information Plaintiff provided during a March 1998 interview for another Trainer opening, Plaintiff's candidate profile, and Plaintiff's performance as a guest trainer, he believed that Plaintiff did not have up-to-date knowledge with respect to overhead line work because Howard knew that Plaintiff had worked exclusively in an underground streetlight cable repair position for the past two years. *Id.* at 48–49, 82–83, 87–88, 93.

Plaintiff also points to his 1999 evaluation, which covers the period during which he applied for this job, in which his communication skills were rated as exceeding requirements and other evidence indicating that he possess good communication skills. Plaintiff also points to evidence that he possesses good teamwork skills and that his evaluation indicated that he "exceed[ed] job requirements" in "safety & security". Pla. Resp. to Def. Mot. S.J., Ex. 15 at G8673.

However, as Defendants note, the performance evaluations cited by Plaintiff are irrelevant because they were not created until after the hiring decision was made. Further, whether Plaintiff was actually qualified for the position goes to whether Plaintiff can establish a prima facie case, not to whether there is evidence of pretext. The issue before the Court is whether Plaintiff has produced evidence to contradict that Howard believed that Plaintiff did not meet the selection criteria, not whether Howard's assessment of Plaintiff's qualifications was ultimately correct. *Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir. 1997). Howard consistently testified that he believed Plaintiff did not meet the criteria Howard selected to determine who would be interviewed for the position. Plaintiff has produced no evidence to contradict Howard's testimony that he was told by individuals who observed Plaintiff as a guest instructor that Plaintiff had not demonstrated good communication skills. Plaintiff cannot dispute that Howard, the decisionmaker, reasonably believed that Plaintiff had not demonstrated good teamwork skills, because Howard thought that Plaintiff's underground streetlight cable repair position required Plaintiff to work as an "individual contributor" rather than as a member of a team such as a line crew. Howard Dep. at 53–54, 75, 77. The Court will not second-guess a decisionmaker's assessment of whether an employee is qualified for a particular position. *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991).

Plaintiff attempts to establish pretext by arguing that the successful candidates did not meet the stated qualifications for the job. Specifically, Plaintiff points to Howard's testimony that "peer credibility" was a factor he considered when deciding whom to interview and promote. Howard Dep. at 42–43. Plaintiff contends that pretext is established by the fact that successful candidate Harry Lindsey did not have such credibility but was awarded a position anyway. To support his contention that Lindsey did not have such credibility, Plaintiff points to Lindsey's performance evaluation, which suggested that Lindsey needed improvement in this area. Pla. Resp. to Def. Mot. S.J., Ex. 19. Plaintiff also contends that Lindsey did not meet the stated requirements of communication skills, job knowledge, and

teamwork because his performance evaluation suggested that he needed improvement in these areas. *Id.* However, Plaintiff does not point to any evidence that Howard reviewed Lindsey's performance evaluation at this time; indeed, Defendants' evidence suggests that Howard did not consider Lindsey's performance evaluation in making the interview decision. Howard Dep. at 72, 179. Nor can Plaintiff establish pretext with evidence that Howard and another selection committee member questioned Lindsey's credibility during his interview. The dispositive inquiry is whether Defendants discriminated against Plaintiff when Howard did not select Plaintiff for an interview. That Howard and another committee member noted concerns about Lindsey's credibility based on events after that decision had been made is irrelevant to Plaintiff's case. Howard Dep. at 174–77.

Plaintiff also contends that two of the interviewed candidates, Chris Jarrard and Joseph Wheeler, did not possess the stated requirement of a minimum of eight years lineman experience. However, Jarrard and Wheeler both had over eight years of combined apprentice lineman and lineman experience at the time they were selected to interview for the position. Pla. Resp. to Def. Mot. S.J., Ex. 28 (Chris Jarrard); Ex. 29 (Joseph Wheeler).

Plaintiff also attempts to establish pretext simply by arguing that he was more qualified than the individuals selected for the Trainer positions. However, as noted above, it is the employer's belief rather than Plaintiff's perceptions about his own performance which are at issue. That Plaintiff possessed more seniority than some of the successful candidates is also insufficient to establish pretext. It is undisputed that seniority was not a factor used in selecting the successful applicants. As Defendants note, longevity and years of service do not necessarily translate into possession of the requisite skills and abilities for a position that requires not only knowledge and expertise, but also communication, instruction, training and teaching.

In sum, Plaintiff contends that the subjective reasons asserted are not credible based on evidence in the record. However, Plaintiff has not come forward with any evidence to establish that the decisionmakers with respect to this position did not actually find that the successful candidates were better qualified than Plaintiff. Plaintiff's evidence is thus insufficient to permit a reasonable factfinder to conclude that the reasons given by Defendants were a pretext for intentional discrimination.

Further, even if Plaintiff could discredit one of the reasons Howard decided not to interview him, that fact would not establish that Defendants' entire proffered explanation is pretextual. *Chapman v. AI Transp.,* 229 F.3d 1012, 1024–25 (11th Cir. 2000) (holding that employer is entitled to summary judgment unless the plaintiff proffers sufficient evidence to create a genuine issue of material fact regarding whether each of the employer's articulated reasons is pretextual); *see also Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997) (granting summary judgment where plaintiff could not discredit one of employer's three proffered reasons for the challenged promotion decision).

### White Co–Workers

Defendants contend that Plaintiff's claim that GPC promoted other less-qualified white employees into supervisory positions instead of him should be dismissed because Plaintiff cannot make a prima facie case with regard to this claim. Plaintiff does not respond to this argument and thus is deemed to have abandoned this claim.

### B. *Pattern and Practice*

■ Finally, Plaintiff has failed to create a genuine issue of material fact as to

**1368**

whether a pattern or practice of discrimination existed. Plaintiff has offered only statistical evidence to support his pattern or practice claim. Under the pattern or practice theory, the plaintiff must provide evidence sufficient to establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). While "statistics as to [Defendants'] employment policy and practice may be helpful to a determination of whether [Defendants'] refusal to [ ]hire [Plaintiff] in this case conformed to a general pattern of discrimination against blacks," *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. 1817, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re Employment Discrimination Litig. Against the State of Ala.,* 198 F.3d 1305, 1312 (11th Cir.1999). The analytical deficiencies of Plaintiff's statistical evidence, discussed above, render this evidence insufficient to support a pattern or practice claim.

In addition to Plaintiff's expert reports, Plaintiff offers Defendants' internal personnel documents to support his argument that Defendants maintained a pattern or practice of compensation discrimination. While these documents indicate some disparity in compensation between black and white employees, these documents are not probative as to whether Defendants intentionally discriminated against Plaintiff during the period in question. The documents indicate average salaries of employees divided by racial classification but do not control for factors such as education, experience or skill level and thus cannot prove that Defendants discriminated on the basis of race. Plaintiff has thus failed to come forward with evidence sufficient to prove

that intentional discrimination was Defendants' "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75 Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's pattern and practice claim is GRANTED.

Accordingly, the Defendants' motion for summary judgment on Plaintiff's individual claims [# 203] is GRANTED.