**[PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 99-14741

_____

D. C. Docket No. 99-01383-CV-J-S

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 09, 2000
THOMAS K. KAHN
CLERK

VALDA STEWART,

Plaintiff-Appellant,

versus

BOOKER T. WASHINGTON INSURANCE,
BOOKER T. WASHINGTON BROADCASTING COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 9, 2000)

Before CARNES, MARCUS and FARRIS[*], Circuit Judges.

MARCUS, Circuit Judge:

---

[*]Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

This appeal is from an order of summary judgment for the Defendants, Booker T. Washington Insurance Company ("Insurance") and Booker T. Washington Broadcasting Company ("Broadcasting"), in a suit brought by Valda Stewart for alleged violations of Title VII. In essence, Stewart claimed that the Defendants, her former employers, discriminated against her by transferring, terminating, and failing to rehire her on account of her sex and in retaliation for having filed a previous charge with the Equal Employment Opportunity Commission (the "EEOC").

The district court grounded summary judgment on the conclusion that Stewart did not file a charge with the EEOC within 180 days of the alleged unlawful practices, as required by 42 U.S.C. §2000e-5(e)(1). After thorough review, we reverse as to Stewart's termination and failure to rehire claims because the charge filing period for a retaliatory discharge claim does not begin to run until a plaintiff receives notice of termination, and on this record there is a genuine issue of material fact as to whether Stewart received such notice more than 180 days before she filed. However, we affirm summary judgment as to Stewart's transfer claim because she failed to file an EEOC charge within the statutorily prescribed period following the alleged retaliatory transfer.

# I.

The facts and procedural history of this case are relatively straightforward. Valda Stewart was hired by Insurance as an accountant in 1990. Approximately nine months later, she was informed by Kirkwood Balton, the president of Insurance, Broadcasting, and the A.G. Gaston Construction Company ("Construction") that she would be doing the accounting work for Broadcasting and Construction, subsidiaries of Insurance. Stewart became Broadcasting's Vice President of Accounting and also an officer at Construction.[1]

On April 24, 1996, Stewart filed her first charge of discrimination with the EEOC, naming Broadcasting as her employer and alleging that she was being sexually harassed by her supervisor, Barry Williams, and discriminated against on the basis of her sex. Stewart alleges that she was then told in May 1996 that, due to her pending EEOC charge and the related investigation, she was being transferred to exclusively Broadcasting duties but that she would be reassigned to both Broadcasting and Construction when the investigation was completed. On

---

[1]In its submissions to the FCC, Broadcasting represented that it had two parent companies, Insurance and A.G. Gaston Corporation. Broadcasting is listed as Stewart's employer on her 1993-1997 W-2 forms. Insurance argued to the district court that it was not Stewart's employer or joint employer for Title VII purposes. Stewart said that Broadcasting was really a division of Insurance or that the two companies may be considered as a joint employer for purposes of Title VII actions. The district court did not reach this issue because it granted summary judgment to the Defendants on other grounds.

July 2, 1997, Stewart received a dismissal and a right to sue letter from the EEOC. She did not file suit within 90 days of that right to sue letter.

Stewart remained at Broadcasting until she was terminated on November 21, 1997. The parties disagree about when Stewart received notice of her termination. The Defendants argue, and the district court agreed, that Stewart received notice of her termination in May 1997 when she learned Broadcasting's primary assets (two radio stations) were going to be sold, at which time all employees of that division would be terminated. Kirkwood Balton, the president of both defendant corporations, testified that after the asset purchase agreement was executed on May 12, 1997, he held a meeting with all the employees of Broadcasting, at which meeting:

> we told them that we had entered into an agreement to sell the radio station and that we were concerned about the employment of all of our people, and we were concerned about the continued operation of our broadcast service until- until it was- the sale brought to closure, and we told all of our employees that we would help them with employment, try to hire them, or if they stayed on with us until the end, until the end of the sale, that we would pay them four months' severance pay.

He also testified that all of Broadcasting's employees were terminated following the sale of the radio stations, except for one employee who was retained to oversee the operations of Broadcasting's remaining asset.

According to Stewart, she first learned that she was going to be terminated in November 1997. Stewart stated in an affidavit that during the summer and fall of 1997, after Broadcasting announced that its radio stations would be sold, many Broadcasting employees were offered interviews with the company that had agreed to purchase the radio stations. She believed she was not offered an interview because "Mr. Balton had in mind for me to continue working for the A.G. Gaston affiliated companies, including the Construction, Cemetery, Public Relations, and Insurance companies, following the sale of the stations." She also stated that,

> Prior to November 1997, neither Mr. Balton nor any other officer or employee under Balton's direction told me or indicated in any way that I was to be terminated as a result of the sale of [the radio stations]. Since the Broadcasting Service remained in existence after the sale as did the numerous other affiliated companies of A.G. Gaston, I had no reason to believe that I would not be retained to perform services for the other affiliated companies as Mr. Balton had told me in May 1996 and as I had done throughout my employment since October 1990. It was not until early November 1997 that I had any indication that I may be terminated.

Stewart said that she had an exit interview on November 3, 1997 and she was told that her termination date, if any, was uncertain. According to Stewart, she was told on November 20, 1997 that she was being terminated and her last day of work was November 21, 1997.

On January 8, 1998, Stewart sent a letter and a resume to Insurance. She stated that she was interested in working for that company. She was not hired.

5

On February 13, 1998, Stewart filed a second charge of discrimination with the EEOC, naming Insurance as her employer and claiming that since the filing of the April 1996 charge she had been subject to retaliation and discriminated against as shown through a transfer and then her termination. She also alleged that she had been transferred from her duties in the Defendants' "construction, broadcasting, cemetery, and public relations division to solely the broadcasting division, and was told at the time of her transfer that such action was for the time during which the investigation of her EEOC was pending, and that she would be reinstated to her full duties after such investigation was completed." On June 8, 1998, she filed a third charge with the EEOC against Broadcasting alleging the identical grounds stated in her February 1998 charge.

On May 27, 1999, Stewart filed suit against Insurance and Broadcasting alleging sex discrimination and retaliation in violation of Title VII. Her complaint charged that the two Defendants were one enterprise and her joint employer. Both Defendants filed motions to dismiss, arguing that Stewart did not file an EEOC charge within 180 days of when she received notice of her termination. The district court converted the motions to dismiss into motions for summary judgment. After discovery was conducted, the district court granted summary judgment in favor of the Defendants, finding that Stewart had received notice of her termination

6

in May 1997 but failed to file a charge with the EEOC within the statutory period following that notice.

## II.

We review a district court's order granting summary judgment de novo, applying the same standards as the district court. See Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). Summary judgment is authorized when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing whether there is any "genuine issue" for trial, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir.1997), and "resolve all reasonable doubts about the facts in favor of the non-movant." United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555, 1558 (11th Cir.1990). Moreover, the court must avoid weighing conflicting evidence or making credibility determinations. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999), cert. denied __ U.S. __, 120 S.Ct.

7

1962, 146 L.Ed. 2d 793 (2000). Instead, "'[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Hairston, 9 F.3d at 918 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## III.

We conclude that the district court erred in determining that Stewart's EEOC charge of discriminatory and retaliatory termination was untimely filed and therefore also erred in granting summary judgment to the Defendants. The Defendants did not present any clear evidence that the decision to terminate Stewart was made or communicated to her before November 20, 1997. Moreover, the district court improperly discredited Stewart's testimony that she was never told before November 20, 1997 that she was or would be terminated. Since the charge filing period on a termination claim does not begin to run until an employee is told that she is actually being terminated (not that she might be terminated if future contingencies occur) and Stewart filed a charge with the EEOC within 180 days of November 20, 1997, the district court erred in granting summary judgment to the Defendants.

Title VII requires a plaintiff to file a charge with the EEOC no more than 180 days after "the alleged unlawful employment practice occurred." 42 U.S.C.

§2000e-5(e)(1). Counting 180 days backward from Stewart's February 13, 1998 charge, we find that the charge was timely as to any allegedly discriminatory act that occurred on or after August 17, 1997.[2]

According to the district court, Stewart received notice in May 1997 that she was to be terminated and this was the date on which the 180-day filing period began to run. In making this finding, the district court relied on the deposition testimony of Kirkwood Balton, the president of both defendant corporations. Contrary to the district court's finding, this deposition testimony does not establish that the Defendants informed Stewart she would be terminated. Balton testified that he told all of the employees that they "had entered into an agreement to sell the radio station," that they "were concerned about the employment" their employees, and that they "would help them with employment, try to hire them, or ... pay them four months' severance pay." Rather than establishing that the Broadcasting employees, presumably including Stewart, were unconditionally told in May 1997 that they would be terminated, Balton's testimony suggests only that

_____

[2]Because Stewart alleges that the June 1998 charge, naming Broadcasting as her employer, was intended as an amendment to her February 1998 charge naming Insurance as her employer and that the two Defendants can be considered as a "joint" employer for the purposes of Title VII, the Court will examine the case in light of the February 1998 charge. Since the district court did not reach the question, we express no opinion on Stewart's joint employer allegation.

9

the employees were told at a general meeting that the Defendants were concerned that the employees' jobs <u>may</u> be in danger but that nothing was definite yet and that the Defendants would try to help them with employment or rehire them. Although Stewart may have had reason, based on this May 1997 meeting, to suspect that she <u>might</u> be terminated as a result of the agreed-upon sale of Broadcasting, <u>if</u> the sale closed, this was not enough to start the charge filing period running. Quite simply, the 180-day charge filing period does not run until the plaintiff is told that she is actually being terminated, not that she <u>might</u> be terminated <u>if</u> future contingencies occur. <u>See</u> <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1100 n.19 (11th Cir. 1996) (noting that the EEOC charge filing period does not begin to run until the employee receives "unequivocal notice of the adverse employment decision."); <u>Pearson v. Macon-Bibb County Hosp.</u>, 952 F.2d 1274, 1279-80 (11th Cir. 1992) (holding that trial was necessary to determine the availability of equitable tolling when an employee was told she could resign, apply for a transfer or, if she refused those options, be terminated); <u>Cocke v. Merrill Lynch & Co.</u>, 817 F.2d 1559, 1561 (11th Cir. 1987) (holding that the charge filing period was equitably tolled when the employee's notice of termination stated that the employer was pursuing positions for the employee within the company "until such time as it is or should be apparent to an employee with a reasonably prudent

10

regard for his rights that the employer has ceased to actively pursue such a position."); see also Ricks, 449 U.S. at 258 ("[T]he only alleged discrimination occurred–and the filing limitations periods therefore commenced–at the time the tenure decision was made and communicated to Ricks."). Beginning the charge-filing period any earlier would make little sense: to require a plaintiff to file a discriminatory termination charge with the EEOC prior to the receipt of notice of termination would be to require a filing prior to the occurrence of the discriminatory conduct, thereby charging the EEOC with responsibility for the arguably advisory task of investigating a hypothetical case of discrimination.

Moreover, although Stewart stated in an affidavit that "[p]rior to November 1997, neither Mr. Balton nor any other officer or employee under Balton's direction told me or indicated in any way that I was to be terminated as a result of the sale," and that "I had no reason to believe that I would not be retained to perform services for the other affiliated companies as Mr. Balton had told me in May 1996," the district court disregarded this evidence, finding that it "flies in the face of credibility."

In finding that Stewart was notified of her termination in May 1997 when she was told that Broadcasting was going to be sold, the district court improperly discredited her testimony that she was never told she was or would be terminated

until November 1997, in plain violation of Rule 56(c). In evaluating a motion for summary judgment under Rule 56(c), "'[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Hairston, 9 F.3d at 918 (quoting Anderson v. Liberty Lobby, 477 U.S. at 255). Moreover, the court must avoid weighing conflicting evidence or making credibility determinations. See Damon, 196 F.3d at 1361. Accordingly, the district court erred in disregarding the Stewart's affidavit testimony based on a credibility determination.

Accepting Stewart's affidavit testimony as true, as we must under Rule 56(c), it is clear that her testimony raised a genuine issue of material fact as to whether she was notified of her termination more than 180 days prior to the filing of her second charge of discrimination with the EEOC. The existence of this issue alone would preclude summary judgment on Stewart's discriminatory and retaliatory termination claim.

Because the evidence presented by both the plaintiff and the defendants raises a genuine issue as to whether the plaintiff received notice of her termination

more than 180 days before she filed her EEOC charge, we hold that the district court erred in finding that the EEOC charge was untimely.[3]

## IV.

We conclude, however, that the district court did not err in dismissing Stewart's transfer claim as untimely. Assuming that Stewart is alleging that her transfer to exclusively Broadcasting duties was a discriminatory act separate from her termination, we agree with the district court that the EEOC charge as to her transfer claim was not timely. Stewart alleges in her complaint that she was told in May 1996, after the Defendants were aware of her complaints of discrimination and her filing an April 1996 EEOC charge, that she was being transferred immediately to exclusively Broadcasting duties. She alleges further that she was told at that time that the transfer was for the period of the investigation of her

---

[3]We also find that the failure to rehire claim was timely filed and reverse the district court's grant of summary judgment to the Defendants on that claim. Stewart alleged that she applied to the Defendants following the sale of Broadcasting and that the Defendants' failure to rehire her was for pretexual reasons and in retaliation for her opposition to illegal sex discrimination. Citing Burnam v. Amoco Container Co., 755 F.2d 893 (11th Cir. 1985), the district court found that the claim was untimely because a failure to rehire subsequent to an allegedly discriminatory firing cannot resurrect the old discrimination claim. Because the original termination claim was not untimely and the failure to rehire claim is not being used to resurrect an untimely termination claim, the district court erred in granting summary judgment to the Defendants on the failure to rehire claim.

13

EEOC charge, and that she would be transferred back to her former position when the investigation was finished. Stewart also states that in July 1997, when the investigation of her April 1996 charge was complete, the Defendants refused to transfer her back to her former position. Based on these facts, Stewart knew in May 1996 that she was being transferred because she filed an EEOC charge and she also knew no later than July 1997 that, although the investigation was complete, she was not being transferred back. Because Stewart waited to file an EEOC charge until February 1998, more than 180 days after she knew that she had been transferred and would not be transferred back, we find that Stewart's claim that she was transferred on the basis of her sex and in retaliation for filing a charge with the EEOC was untimely.

Stewart argues, nevertheless, that the transfer claim was timely filed because it was part of a continuing violation that included her November 1997 termination and the Defendants' refusal to rehire her in 1998. She alleges that the transfer and the termination were both part of a unified plan to terminate her employment. But the only thing supporting the existence of such a plan, however, is the conclusory allegation in her complaint that "[u]pon information and belief, in May 1996 when defendants transferred the plaintiff following the filing of her EEOC charge, the defendants knew that the broadcasting division was going to be sold." (Complaint,

14

¶ 23.) This bare and self-serving allegation where she had no personal knowledge is inadequate to carry Stewart's burden on summary judgement. In fact, the only evidence on this point which could be considered under Rule 56(e) is Balton's deposition testimony (submitted by Stewart) that discussions regarding the sale of the radio stations first started in early 1997, long after the May 1996 transfer and directly contrary to Stewart's allegation. Simply put, the district court did not err in granting summary judgment for the Defendants on Stewart's discriminatory and retaliatory transfer claim.[4]

Accordingly, we AFFIRM the district court's grant of summary judgment with respect to Stewart's transfer claim, REVERSE the district's court's grant of

---

[4]Stewart also argues that the district court failed to give her the ten days required by Rules 12(b) and 56 between the conversion of motions to dismiss under Rule 12(b)(6) to motions for summary judgment under Rule 56. This argument is without merit. Almost two months prior to the hearing on the motions Stewart successfully argued that, "by attaching additional evidence to its motion to dismiss, defendant Insurance Company has 'presented matters outside the pleadings,' and as such has converted its motion to one for summary judgment" and obtained a discovery order on matters including whether her EEOC charge was untimely filed. Three weeks prior to the hearing, Stewart argued for and received an order compelling discovery from Broadcasting on those same matters, over Broadcasting's objection that its motion had not gone beyond the pleadings.

summary judgment with respect to Stewart's termination and failure to rehire claims, and REMAND for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**FARRIS, Circuit Judge, dissenting:**

The trial court fully considered the record and properly applied the law in granting summary judgment. I would affirm.

## BACKGROUND

Prior to May, 1996, Valda Stewart worked for Booker T. Washington Insurance Company as a Controller, performing accounting and auditing duties for the construction, broadcasting, cemetery, and public relations divisions. On April 24, 1996, Stewart filed a charge of discrimination with the EEOC. She alleged that she was subjected to sexual harassment by her supervisor, Barry Williams. In May, 1996, Stewart was transferred from her duties as a Controller to a position at the subsidiary, Booker T. Washington Broadcasting Service, Inc. Stewart alleges that at the time of her transfer, she was told by the president of both companies, Kirkwood Balton, that the transfer was effective for the period of the investigation of her EEOC charge and that she would be transferred back following determination of the investigation. On July 2, 1997, the EEOC completed the investigation and issued Stewart a "right to sue" letter. Stewart was not transferred back to her previous position. On November 21, 1997, following the sale of the Booker T. Washington Broadcasting department, Stewart along with all the other employees were terminated.

On February 18, 1998, Stewart filed another charge of discrimination with the EEOC. This charge was based on sex discrimination and retaliation. Stewart alleged that defendants retaliated against her for filing the EEOC charge by transferring her to Broadcasting when management had knowledge that the company would be sold.

On May 27, 1999, Stewart filed a complaint in district court for sex discrimination and retaliation. On October 29, 1999, the district court converted the defendants' motion to dismiss and entered summary judgment for the defendants. The district court concluded that Stewart's February 18, 1998, EEOC charge was untimely because it was more than 180 days after the alleged discriminatory act.

## DISCUSSION

### I      Standard of Review

The grant of summary judgment is reviewed de novo. *See Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993).

The trial court's determination on equitable tolling is reviewed for clear error. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993).

### II      Equitable Tolling

The defendants contend that the February 18, 1998, EEOC charge is untimely because it was not filed within 180 days of either Stewart's May, 1996 transfer, or, alternatively, July 2, 1997, the date she received her "right to sue" letter from the EEOC. Stewart contends that equitable tolling applies because after she was told she would be transferred back after the investigation of her EEOC charge, she was terminated on November 21, 1997.

In order for equitable tolling to be appropriate, the facts must show that, in the period more than 180 days prior to filing her EEOC charge, Stewart had no reason to believe that she was the victim of unlawful discrimination. *See id.* Equitable tolling is not appropriate when the plaintiff suspects that she may been discriminated against and is generally aware of her legal right to obtain redress. *See id.*

The discriminatory act, here the transfer, which occurred in May, 1996, should have triggered the filing of the EEOC charge for retaliation. The pain that arises from the discriminatory act, the ultimate termination, is of no consequence. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (period commenced at time the decision was made and communicated to the plaintiff, even though one of the effects of the decision, the eventual loss of employment, did not occur until later). Stewart's February 18, 1998, EEOC charge stated that she was told that the

19

transfer was because her EEOC charge was pending.  Stewart also stated that she believed that at the time she was transferred, the defendants had formed the intent to sell the division, and that she believed her job would be eliminated.  This illustrates that Stewart believed that she was the victim of discrimination because her employer's reasons for her transfer were pretextual.  Stewart was also well aware of her legal rights to seek redress because she had already filed an EEOC charge in 1996.

Stewart's charge is untimely on other grounds.  The district court counted back 180 days from the filing of the February 18, 1998, EEOC charge to August 17, 1997.  Thus, Stewart would have to allege that she was unaware that she was the victim of discrimination prior to August 17, 1997.  On July 2, 1997, the EEOC completed its investigation and issued Stewart a "right to sue" letter.  Stewart was not transferred back to her previous position.  At that time, Stewart could determine whether she had been, or was going to be reinstated.  Moreover, on May 12, 1997, company president Balton held a meeting with all the employees of Broadcasting including Stewart and informed them that the company was being sold.  No employee was given affirmative guarantees that they would be rehired after the sale (*id.*).  Also, Balton's statement clearly indicated that whoever stayed at the company until the sale closed would be terminated and receive four months

20

of severance pay (*id.*).  Stewart could have determined that she was the victim of discrimination well before August 17, 1997.

**III    Continuing Violation**

Stewart contends that defendant's conduct constituted a continuing violation by (1) transferring her, (2) refusing to transfer her back to her previous duties, and (3) refusing to rehire her after termination.

Where an employee claims that an employer continuously maintained an illegal employment practice, she may file a valid charge of discrimination until 180 days after the last occurrence of discriminatory practice.  *See Ross*, 980 F.2d at 658.  Where an employer engages in a discrete act of discrimination that continues to adversely affect an employee, or where the employer refuses to rectify the past violation is not a continuing violation.  *See id.*  An employer's refusal to undo a prior discriminatory act is not, in itself, a new act of discrimination.  *See Everett v. Cobb County School Dist.*, 138 F.3d 1407 (11th Cir. 1998) (citing *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992)).

In this case, the discriminatory act of retaliation was Stewart's 1996 transfer. Stewart claimed that this transfer was because of her filing an EEOC charge, and that she believed she would be terminated.  Although Stewart was adversely affected by this transfer when she was not transferred back, and when she was

21

ultimately terminated, this is not a pattern of discrimination. The company's refusal to rectify the past discriminatory act and return Stewart to her previous duties does not constitute a continuing violation. *See id.*

## IV   Rehiring Claim

Stewart contends that the defendants' failure to rehire her constituted sex discrimination. Stewart cites *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 763-64 (11th Cir. 1995), for the proposition that a plaintiff can challenge a failure to rehire after a discriminatory termination whenever the failure stems from a new act of discrimination. In *Hargett*, however, the Eleventh Circuit held that rehire claims in that case were time-barred. Here, Stewart's retaliatory rehire claim is based on her 1996 EEOC charge and is also time-barred. *See id.* Moreover, this claim should be rejected because Stewart fails to allege a prima facie case of sex discrimination. Nearly all of the people identified as being rehired are women. *See McDonald Douglas v. Green*, 411 U.S. 792 (1973).

## V   Conversion to Summary Judgment

Stewart contends that she was not given adequate notice that the defendants' motion to dismiss would be converted to one for summary judgment. Rule 12(b) provides that when matters outside the pleadings are presented, a motion to dismiss

shall be treated as a motion for summary judgment. However, a party must be given ten days notice that the motion is being converted.

Stewart's contention fails because she was the one who requested discovery on the motions to dismiss and was aware that the judge would convert the motion. On August 10, 1999, Stewart introduced matters outside the pleading by filing an Affidavit attached to her response to defendant's motion to dismiss. On August 31, 1999, Stewart filed a motion to continue the hearing on defendant's motion to dismiss and to permit discovery. The district court granted the motion of September 1, 1999. Stewart submitted the entire deposition testimony of company president Balton. The defendants also submitted portions of the same deposition.

On October 25, 1999, Stewart filed an opposition to defendant's motion and specifically recognized that documents taken outside the pleadings would convert the motion to dismiss to a motion for summary judgment. Although Stewart did not receive ten days notice, summary judgment was appropriate. All of the parties were aware that the judge was converting the 12(b)(6) motion and the parties made all the arguments and submitted all the documents they would have presented had they received notice *See Property Management & Investment v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985) (notice failure was not reversible error). The district

23

court judge carefully considered matters outside the pleadings submitted by both parties and correctly entered summary judgment.

## CONCLUSION

Because Stewart had reason to believe that she was the victim of unlawful discrimination more than 180 days before filing the 1998 EEOC charge, the district court's determination that equitable tolling was inapplicable was not clearly erroneous. The alleged discriminatory act of retaliation occurred during the 1996 transfer and the subsequent events do not constitute a continuing violation. Stewart cannot make out a prima facie case for her rehire claim. Because Stewart presented evidence outside the pleadings, the district court correctly converted the motion to dismiss to a motion for summary judgment.

I respectfully dissent. I would affirm.