[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14335
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00196-ODE

LISA BARTELL,

Plaintiff - Appellant,

versus

FULTON COUNTY, GEORGIA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 26, 2018)

Before WILSON, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Lisa Bartell appeals the district court's grant of summary judgment in favor of her former employer Fulton County, Georgia ("Defendant") on her claims of race discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq* ("Title VII").  On appeal, Plaintiff argues that the district court erred by concluding that she failed to establish a *prima facie* case of race discrimination.  She also asserts that the district court failed to address her retaliation claim.  After careful review, we affirm.

## I.    BACKGROUND

### A.    Facts

Plaintiff, a black female, began working for Fulton County, Georgia as a Nutritionist in the Women, Infants, and Children ("WIC") Program in 1994. According to Stacy Jones, the Deputy Personnel Director of the Fulton County Personnel Department, Plaintiff was hired into a temporary unclassified position. During this litigation, Plaintiff has disagreed that the position was temporary. Nonetheless, she has also acknowledged that it was not permanent and that she therefore did not qualify for health or pension benefits.  At the time Plaintiff was hired, the Nutritionist position did not require a license as a registered dietician.  In 2003, the job title changed from Nutritionist to Public Health Nutritionist and the classification specifications for the position were amended to require that an

individual have a license as a registered dietician. Plaintiff is not licensed as a registered dietician.

The WIC Program is part of Fulton County's Department of Health Services. Dr. Patrice Harris was the Director of Fulton County's Department of Health Services. In May 2012, Patricia Cwiklinski was hired as the Fulton County Public Health Nutrition Manager. Her responsibility for overseeing the Fulton County WIC staff included assigning nutritionists to one of the WIC Clinics. Fulton County had six WIC clinic sites: CHR Boulevard, Neighborhood Union, College Park, Adamsville, Sandy Springs, and Alpharetta.[1] The number of nutritionists assigned to each clinic varied and clinic assignments changed when designated nutritionists missed work. According to Plaintiff, she was called regularly to cover for staff at other clinics. She was also asked to cover two clinics in the same day approximately three or four times every six months.

At some point after Cwiklinski was hired, she met with all of the nutritionists to determine clinic assignments. According to Plaintiff, although white nutritionists were able to choose their clinic assignments,[2] Cwiklinski chose the Adamsville location for Plaintiff and promised her that she would be promoted to breastfeeding coordinator. At that time, the Adamsville location had the lowest

---

[1] There had been seven WIC clinics, but the Lakewood location closed in 2012.

[2] Cwiklinski denies that white nutritionists were able to select their own clinic assignments.

3

number of breastfeeding clients and Plaintiff was the only staff member qualified as a certified lactation consultant.  It was hoped that, given Plaintiff's expertise in lactation issues, she could increase the clientele at Adamsville.  As to the expectation that Plaintiff would eventually be promoted to the position of breastfeeding coordinator, when Cwiklinski assigned Plaintiff to the Adamsville location, she believed that the incumbent breastfeeding coordinator would retire.  Yet, as of Cwiklinski's last day as Public Health Nutrition Manager in September 2014, the incumbent breastfeeding coordinator had still not retired.  Thus, the anticipated opening never came to pass.

As to Plaintiff's complaint that the Adamsville location was inconvenient, Plaintiff admitted that it was actually closer to her home than the location she preferred:  College Park.  Nevertheless, she claimed that the Adamsville location was less preferable because it was inadequately staffed.  Plaintiff avers that she saw 75 patients per day and "barely" got a lunch break and often had to wait to use the restroom until her lunch break.  According to Plaintiff, white nutritionists received more support.  Specifically, management ensured adequate staffing at the locations where white nutritionists were assigned.  Nevertheless, Plaintiff admitted that management sent someone to assist at the Adamsville location approximately once per week.

4

Plaintiff also claimed that black nutritionists were required to teach nutrition classes more often than white nutritionists. However, when Plaintiff's co-worker, Renee Cheney, was demoted from Public Health Nutritionist to Nutritionist Assistant, Cheney was assigned to teach nutrition classes at all of the clinic locations. Although Cheney came to the Adamsville location to teach classes, Plaintiff volunteered to continue teaching classes so that clients would not have to wait too long. No one directed Plaintiff to continue teaching classes.

In February 2013, Cwikliniski directed Michelle Broussard, the Public Health Nutrition Coordinator, to obtain college transcripts from several employees. Broussard thereafter requested a college transcript from Plaintiff and three other black nutritionists: Cheney, Joanne Arceneaux, and Mohmoud Rashad. Broussard indicated that the reason for this request was an upcoming state audit. According to Plaintiff, white nutritionists were not asked to provide a copy of their college transcripts. Cwiklinksi explained that she requested transcripts only from nutritionists who were not licensed. Plaintiff was not a licensed dietician, nor were the three other black nutritionists who were asked to provide transcripts.

On April 29, 2013, Cwiklinski sent an email to three white nutritionists—Rachel Agnew, Greta Sebestyen, and Christine Kassas—to thank them for their hard work and to inform them that they could take a paid day off in the next couple of months. That same day, Cwiklinski learned that she was not authorized to

5

provide paid time off and she then emailed Agnew, Sebestyen, and Kassas to rescind the offer.

In September 2013, the Fulton County Board of Commissioners approved a regulation providing that any employee in a temporary position could not work more than 29 hours per week. Cwiklinski held a meeting in December 2013 to inform all temporary employees, including Plaintiff, that their hours would be reduced beginning in January 2014. The Fulton County Board of Commissioners, however, suspended enforcement of the regulation until August 2014. Plaintiff's hours were reduced from 40 to 29 hours per week in either April or August of 2014.

Around the same time, Fulton County sought to replace temporary positions with permanent positions and each Fulton County Department was asked to complete an evaluation form for the temporary positions it sought to replace with a permanent position. Dr. Harris submitted forms for replacement of three temporary Public Health Nutritionist positions, one of which was Plaintiff's.

On July 31, 2014, the panel reviewing temporary positions approved the creation of three permanent Public Health Nutritionist positions. The Fulton County Personnel Department posted and recruited candidates for the new positions, as the Fulton County Personnel Regulations did not permit candidates to

be placed into permanent positions without a competitive recruitment process. Plaintiff was told that she needed to apply for the position.

On August 1, 2014, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination under Title VII based on the reduction in her work hours. Shortly thereafter, on August 14, 2014, the Public Health Nutritionist position was posted. The job posting indicated that a registered dietician license was required. Plaintiff applied for the position on August 15, 2014. On the application, she answered "No" to the question asking if she had a valid Georgia license as a registered dietician. Based on her application, the Fulton County Personnel Department determined that she was not qualified for the position because she did not hold a registered dietician license. Because she was deemed not qualified for the position, her application was not forwarded to the Department of Health Services for evaluation.

Plaintiff later requested a meeting with Dr. Harris to discuss the reduction in her hours. At the meeting held on October 20, 2014, Dr. Harris presented Plaintiff with a termination letter. The letter stated that Plaintiff's temporary position was terminated effective October 28, 2014, and that she had applied for a permanent position but was informed on August 19, 2014, that the Personnel Department had determined that she did not meet the minimum requirements of the permanent positon. According to Plaintiff, Dr. Harris told her that she had the option to

7

continue reporting to work until the effective date of her termination:  October 28, 2014.  Plaintiff came to work the next day on October 21, 2014, and was escorted out of the building.

## B.    Procedural History

Plaintiff subsequently filed this lawsuit against Defendant, asserting claims of race discrimination pursuant to Title VII and 42 U.S.C. §1981, retaliation under Title VII and § 1981, intentional infliction of emotional distress, and punitive damages.  Defendant moved to dismiss Plaintiff's claims, except for her Title VII retaliation claim.  The district court granted Defendant's motion to dismiss as to Plaintiff's claims for intentional infliction of emotional distress, punitive damages, Title VII discriminatory discharge, and her claims under § 1981.  However, the court denied the motion as to Plaintiff's Title VII retaliation claim, as well as her race discrimination claim under Title VII that concerned the alleged acts that occurred prior to her termination.

Defendant moved for summary judgment on Plaintiff's remaining claims.  A magistrate judge issued a Report and Recommendation ("R&R") recommending that Defendant's motion for summary judgment be granted.  Over Plaintiff's objections, the district court granted summary judgment in favor of Defendant.  This appeal followed.

8

## II.    DISCUSSION

### A.    Standard of Review

We review *de novo* the district court's grant of summary judgment.  *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005).  When conducting this review, we "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party."  *Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.    Title VII Race Discrimination

Plaintiff argues that the district court erred by concluding that she failed to establish a *prima facie* case of race discrimination under Title VII.  Pursuant to Title VII, an employer is prohibited from discharging, or otherwise discriminating against, an individual with respect to compensation, conditions, or privileges of employment because of race.  42 U.S.C. § 2000e-2(a)(1).  When a plaintiff offers only circumstantial evidence of discrimination, as in the present case, we typically apply the framework set forth in *McDonnell Douglas Corporation v. Green*, 411

9

U.S. 792 (1973).  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997).

To succeed on a claim based on circumstantial evidence, a plaintiff must establish a *prima facie* case of race discrimination by showing that:  "(1) [she] is a member of a protected class; (2) [she] was qualified for the position; (3) [she] suffered an adverse employment action; and (4) [she] was replaced by a person outside [her] protected class or was treated less favorably than a similarly-situated individual outside [her] protected class."  *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).  If a plaintiff establishes a *prima facie* case of race discrimination, then the burden shifts to the employer to put forth a legitimate nondiscriminatory reason for the adverse employment action.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  If the employer does so, then the burden shifts back to the plaintiff to show that the proffered reason is a pretext for discrimination.  *Id.*

In granting summary judgment on Plaintiff's race discrimination claim in the present case, the district court concluded that Plaintiff failed to establish a *prima facie* case of race discrimination.  Specifically, Plaintiff failed to identify a similarly situated comparator outside of her protected class who was treated more favorably with respect to clinic assignments and workload.  The court further

concluded that Plaintiff failed to establish that Cwikliniski's request for her transcript was an adverse employment action.

### 1.    Clinic Reassignment and Workload

When comparing a plaintiff's treatment to that of an employee outside the protected class, the plaintiff must show that the comparator employee is similarly situated in all relevant respects to the plaintiff. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis omitted).

Here, the district court did not err by concluding that Plaintiff failed to provide evidence of a similarly situated comparator who was treated more favorably. Although Plaintiff stated that white nutritionists were able to choose their clinic assignments, she did not identify any specific white nutritionists who selected their own clinic assignments. Nor was there any evidence in the record to support this generalized allegation. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 850 (11th Cir. 2000) (explaining that "bare and self-serving allegation[s]" without any personal knowledge are not sufficient to withstand summary judgment).

11

Plaintiff also stated that she and black nutritionists were required to teach more nutrition classes than white nutritionists. But Plaintiff admitted that she volunteered to teach classes, even after Cheney had been assigned to teach classes at the Adamsville clinic location and thereby to relieve Plaintiff of this burden. As to Plaintiff's repeated assertion that white nutritionists received paid time off and black nutritionists did not, the district court correctly found that this argument was administratively barred. *See* 42 U.S.C. § 2000e-5(e)(1) (providing that a charge of discrimination must be filed within 180 days after the alleged unlawful employment practice occurred). Indeed, Plaintiff filed her EEOC charge in August 2014, which was more than 180 days after Cwikliniski sent the email offering the paid day off to the three white nutritionists in April 2013. But regardless, the record shows that white nutritionists never received any paid time off, as Cwiklinski rescinded the offer the same day that she made it.

To support her overarching argument that white nutritionists were treated more favorably, Plaintiff relies on testimony Cheney provided during a deposition in a separate case. In that deposition, Cheney stated that "everything [Cwiklinski] did was only for the white nutritionists. She never did anything to really help the black nutritionists." Cheney went on to say that when black nutritionists needed support, Cwiklinski would say that "there was nothing she could do. But when the white nutritionists were short of help, she would go help them."

Like Plaintiff's allegations, Cheney's unspecific generalization that white nutritionists were provided with support from management, while black nutritionists were not, was insufficient to show that white nutritionists were treated more favorably than black nutritionists. *See Stewart*, 232 F.3d at 850. Moreover, Cheney's assertion that black nutritionists were never provided with any support is at odds with Plaintiff's testimony that management sent someone to assist at the Adamsville location approximately once per week.

In short, the district court did not err by concluding that Plaintiff failed to establish a *prima facie* case of race discrimination because she failed to show that white nutritionists were treated more favorably.

### 2.    Transcript Request

Plaintiff also argues that the district court erred by concluding that the request for her college transcript was not an adverse employment action. "An adverse employment action is conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)).

Here, the district court properly determined that Plaintiff failed to show that the transcript request was materially adverse to her employment. *See Davis v.*

13

*Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) ("[T]o prove adverse employment action . . . an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." (emphasis in original)).  Plaintiff argues that the transcript request in February 2013 affected her employment because it identified her as not having a license as a registered dietician, which ultimately led to her termination in October 2014.  Plaintiff, however, has presented no evidence showing that the transcript request had any impact on Fulton County's decision to eliminate her temporary position in July 2014, on the ultimate determination that she was not qualified for the permanent position in August 2014, or on her day-to-day working conditions following the request.  *See id.*, 245 F.3d at 1239 ("[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.").

Further, even had no request for a transcript been made, Plaintiff would still not have secured the permanent position that became available eighteen months later because, not being a licensed dietician, Plaintiff was not qualified for the position.  Indeed, on her application for a permanent position, Plaintiff acknowledged that she did not have a license as a registered dietician.  And it is undisputed that a registered dietician license was a requirement of the job under

County guidelines.  In short, Plaintiff failed to show that Cwiklinski's April 2013 request for a transcript materially changed any condition of Plaintiff's employment.

Leaving aside the fact that the transcript request was not an adverse action, Plaintiff has also failed to show any disparate treatment based on management's request that Plaintiff provide her college transcript, but its failure to ask Rachel Agnew, a white nutritionist, to do the same.  Cwiklinski anticipated a state audit and the State of Georgia required a nutritionist to have either an acceptable degree or a license as a registered dietician.   Aware that Plaintiff was not a licensed dietician, Cwiklinski needed confirmation that Plaintiff had the requisite college degree in a qualifying area.  Agnew, on the other hand, was a licensed registered dietician, which, by itself, satisfied the State's requirements.  Thus, there was no need to inquire whether she also had a college degree.

In short, Plaintiff was not treated differently from a similarly-situated comparator by being asked to provide a transcript.  Even had she been treated differently, the request for a transcript did not constitute a significant change in the conditions of her employment.  Accordingly, the district court did not err by concluding that Plaintiff failed to establish a *prima facie* case of race discrimination based on this request.

15

### C.    Title VII Retaliation

Finally, Plaintiff argues that the district court erred by failing to address her retaliation claim.  In response, Defendant asserts that Plaintiff waived her arguments concerning the Title VII retaliation claim.  We agree.

Our local rule provides that a party who fails to object to a magistrate judge's findings or recommendations contained in the R&R "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In the present case, the magistrate judge recommended that the district court grant summary judgment in favor of Defendant on Plaintiff's Title VII retaliation claim because Plaintiff failed to show a causal connection between her filing the EEOC charge in August 2014 and the alleged discriminatory manner of her removal from the clinic in October 2014; that is, being escorted out of the building.  The magistrate judge informed Plaintiff that a party who fails to object to the magistrate judge's findings or recommendations contained in the R&R within 14 days "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  Despite the warning, Plaintiff—who

16

was represented by counsel—did not object to the magistrate judge's recommendation that summary judgment be granted in favor of Defendant on her retaliation claim, nor did she object to the magistrate judge's determination that she failed to establish a causal connection between the statutorily protected activity and the adverse employment action.

Plaintiff, who is also represented by counsel on appeal, failed to file a reply brief responding to Defendant's assertion that she waived her retaliation-claim arguments by not objecting to the magistrate judge's R&R:  meaning Plaintiff has made no effort to rebut Defendant's assertion of waiver nor to argue that the district court plainly erred in its ruling.   Because Plaintiff was on notice about the time period for filing objections to the R&R and the consequences for failing to object, her failure to object constitutes a waiver of her right to challenge the denial of her retaliation claim.  *See* 11th Cir. R. 3-1.  Moreover, she has not argued—nor do we discern—plain error in the district court's ruling on this claim.  For that reason, we likewise affirm the district court's grant of summary judgment on the retaliation claim.

## III.   CONCLUSION

For the above reasons, the district court's order granting summary judgment in favor of Defendant is **AFFIRMED**.