[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-13855

Non-Argument Calendar

————————————

JONATHAN TRENT MASSA,

Plaintiff-Appellant,

*versus*

TEAMSTERS LOCAL UNION 79,
UNITED PARCEL SERVICE, INC.,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-00796-KKM-JSS

————————————

Before ROSENBAUM, NEWSOM, and ABUDU, Circuit Judges.

PER CURIAM:

Jonathan Massa appeals the district court's order granting United Parcel Service, Inc.'s ("UPS") and Teamsters Local Union 79's ("Union") motions for summary judgment on his complaint alleging race discrimination, disability discrimination, and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The district court found that Massa's claims were untimely and, alternatively, that they failed on the merits. Massa appeals, arguing that genuine issues of material fact remain about the timeliness and merits of his claims. After careful review, we assume Massa's claims were timely, but we conclude that summary judgment was nonetheless appropriate on the merits. So we affirm.

## I.

Massa worked for UPS as a part-time package "preloader" at its Bayside facility in Tampa. During his employment, he was a member of the Union, and a collective bargaining agreement between UPS and the Union governed his employment.

In November 2019, Massa suffered a serious knee injury while playing basketball. The injury required surgery and then extensive physical therapy. Massa testified that he was under a work restriction for at least six months after this injury. He ultimately did not return to work at UPS.

After the injury, Massa notified UPS and the Union about the injury and sent pictures of his knee, which showed a displaced kneecap. According to Massa, his UPS supervisor, Liz Harrill, and two Union stewards, Marc Joey Howard and Alan Lucciola, told him to apply for leave under the Family and Medical Leave Act ("FMLA"). So Massa submitted an FMLA application. The application was denied, though, because Massa had not worked a sufficient number of hours in the preceding twelve months. It does not appear that Massa contacted human resources for UPS.

In early January 2020, UPS sent a letter to Massa at the address where he had lived for many years, warning that he would be terminated unless he reported to work within 48 hours. A discharge letter followed on January 14, 2020, stating that Massa had been terminated on January 13, 2020, for an unauthorized leave of absence.

Massa testified that he did not receive the 48-hour notice or discharge letter. But over the next few months, he came to understand he had been fired. In January or February 2020, Massa learned that his TeamCare health insurance had been canceled. He spoke with union steward Lucciola, who said he would "figure it out" and call Massa back, but he never did. Then, near the end of March 2020, Massa submitted a COBRA[1] election form opting to

---

[1] COBRA refers to Comprehensive Omnibus Budget Reconciliation Act, which provides that "employers must allow former employees the opportunity to continue health care coverage under the employer's plan if a

keep his insurance through self-payments.  UPS also sent a final paycheck to Massa for his unused vacation time on February 13, 2020.

In early April 2020, Massa submitted a claim for short-term disability with TeamCare, starting from the date of the injury.  On the form, his physician provided an estimated return to work date of July 1, 2020.

On October 13, 2020, Union steward Howard texted Massa that UPS "would like to make you an offer of $250 for your open grievances and also asking for a resignation instead of being fired." This offer related to the fact that, at the time he was terminated, Massa had a substantial number of open grievances related to attendance-related disciplinary letters he had received, many from the latter half of 2019.  Frank Dore, the UPS labor relations manager who made the offer, testified that the company, despite Massa's termination, was still required to process Massa's grievances, many of which concerned pay, and so the offer was intended to clear Massa from the grievance log.  Union business agent Thor Johnson described UPS's offer as consistent with its practices in similar cases, and he explained that the "resignation" reference meant that UPS would remove the "discharge on his record" so that Massa could say he voluntarily resigned when seeking future employment.

---

qualifying event occurs," such as discharge from employment. *Meadows v. Cagles, Inc.*, 954 F.2d 686, 691 (11th Cir. 1992).

Later, in March 2021, Howard invited Massa to attend a meeting with Dore and Johnson relating to his open grievances and his absence from work. Dore said he would consider rehiring Massa if he had good, documented reasons for being absent. Massa refused the meeting, stating that he would handle the matter through his lawyer.

Instead, on June 1, 2021, Massa filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Then he sued UPS and the Union in federal court, alleging claims of race discrimination, disability discrimination, and retaliation under Title VII and the ADA.

After discovery, the district court granted summary judgment to UPS and the Union. The court found that all Massa's claims were untimely because he failed to file a charge of discrimination within 300 days of receiving notice of his termination. And even if they were not time-barred, the court said, Massa's claims failed on the merits. This appeal followed.

## II.

We review *de novo* an order granting summary judgment, considering the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). Summary judgment is appropriate if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). But summary judgment should be denied if "a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**A.**

Massa first contends that the district court erred in concluding that his claims were untimely because the 300-day EEOC-filing period did not begin to run until UPS made the $250 offer in October 2020, confirming his termination. He also argues that UPS and the Union breached their duties to provide notice under the CBA, and that the record contains genuine issues of material fact about his knowledge of his termination.

We need not resolve whether Massa's EEOC charge was timely filed. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit"). Even assuming the district court erred in dismissing Massa's claims as time barred, "we can affirm the court's judgment for any reason supported by the record, even if the district court did not rely on that reason." *Wright v. City of St. Petersburg, Fla.*, 833 F.3d 1291, 1294 (11th Cir. 2016) (quotation marks omitted). And in any case, we agree with the court that summary judgment was appropriate on the merits, for the reasons we explain below.

**B.**

Next, Massa contends that the district court erred in granting summary judgment on his ADA discrimination claim. He asserts that UPS failed to prove he could not perform the essential functions of the preloader position. And he believes that UPS and

the Union violated the ADA by failing to assist him with returning to work.[2]

The ADA makes it unlawful for employers to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A qualified individual is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8); *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007). Accordingly, an ADA plaintiff must show that he can perform the essential functions of his job, either with or without a reasonable accommodation. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005). An individual who cannot perform the essential functions of his job, even with an accommodation, is not a "qualified individual" protected by the ADA. *Holly*, 492 F.3d at 1256.

Essential functions are the "fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). "Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis."

---

[2] Massa addresses only the ADA in the section of his brief concerning his discrimination claims; he does not reference Title VII or explain how the ADA analysis is applicable to Title VII. Accordingly, we deem the Title VII race-discrimination claim abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (issues not raised on appeal are deemed abandoned).

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001); *see Holly*, 492 F.3d at 1257; 29 C.F.R. § 1630.2(n)(3).

"The employee has the burden of identifying an accommodation and demonstrating that it is reasonable." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016). And in this Circuit, "an employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Id.* at 1255–56.

Here, undisputed evidence shows that, in the months following his injury, Massa was physically incapable of performing the essential functions of his preloader position. UPS presented evidence that Massa's job required physical labor, specifically handling packages and standing or walking for several hours at a time. Massa also testified that, due to his knee injury and surgery, he was physically unable to perform the job of preloader for at least six months after the injury. So we reject Massa's argument that genuine issues of material fact remain about his ability to perform the essential functions of the preloader position.

Massa's claim that UPS failed to offer a reasonable accommodation, such as light work, fails for several reasons. To start, Massa does not dispute the district court's conclusion that he failed to plead an accommodation claim.[3] Nor does the record show that

---

[3] Generally, we will not consider the merits of an argument that the district court declined to consider based on its finding that the issue was not properly raised, when, on appeal, a party fails to challenge the district court's

Massa requested an accommodation from UPS for his injury, or that he otherwise notified UPS or the Union of his recovery status—not just the injury itself—between his injury in November 2019 and the issuance of the 48-hour notice and discharge letter in January 2020. Because Massa never made a request for an accommodation, UPS's "duty to provide a reasonable accommodation [was] not triggered." *Frazier-White*, 818 F.3d at 1255–56. And following Massa's injury, UPS was not required under the ADA to grant an "indefinite leave[] of absence so that he could work at some uncertain point in the future." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (explaining that a leave of absence may be reasonable if it would allow the employee to "perform the essential functions of their jobs presently or in the immediate future").

For these reasons, the district court did not err in granting summary judgment on Massa's ADA discrimination claim.

## C.

Turning to the retaliation claims, Massa argues that he established genuine issues of material fact as to whether he engaged in protected activity by complaining about race discrimination and about the cancellation of his medical benefits. He also claims he established a causal link between his protected activity and the "culmination" of the "termination process" in October 2020, when he received the $250 offer to settle his open grievances.

---

preliminary finding and raises arguments only as to the merits. *See Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1199 (11th Cir. 2024).

Both Title VII and the ADA prohibit retaliation against employees because they engaged in protected conduct, which includes opposition to practices made unlawful by the respective anti-discrimination laws.  42 U.S.C. §§ 2000e-3(a), § 12203(a); *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1075-77 (11th Cir. 1996).  To establish a *prima facie* case of retaliation under either Title VII or the ADA, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and adverse action.  *See Stewart*, 117 F.3d at 1287.

One way to establish a causal link is to show that the employer knew of the statutorily protected activity and there was a close temporal proximity between this awareness and the adverse action.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  But without other evidence tending to show causation, a claim of retaliation fails as a matter of law "[i]f there is a substantial delay between the protected expression and the adverse action."  *Id.*  Without more, a delay of three to four months between the protected activity and termination is too long, as a matter of law, to satisfy the causation element of a retaliation claim.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Here, the district court properly granted summary judgment on Massa's retaliation claims.  Massa identifies two potential sources of protected activity: (1) his grievances alleging race discrimination by his supervisor, Harrill; and (2) his complaints about

the cancellation of his medical benefits.  But even assuming he engaged in protected activity, Massa cannot establish a causal connection between the protected activity and his termination.

The last of Massa's race-based complaints was filed on August 15, 2019, nearly five months before the 48-hour notice and discharge letter in January 2019, which is too long to satisfy the causation element for a retaliation claim.  *See Thomas*, 506 F.3d at 1364.  And we see no other circumstantial evidence from which the jury could infer that the two events were causally related, particularly in light of Massa's undisputed injury, his unauthorized absence from work, and his prior history of attendance-related discipline.

Nor can Massa show that his termination was in retaliation for complaining to his supervisor about the cancellation of his medical benefits.  The record shows that UPS finalized the termination of Massa's employment in February 2020, cutting off his medical benefits and paying out his accrued leave, even if his pay grievances remained unresolved.  Thus, the alleged protected activity came after, and in response to, the alleged retaliation.  No reasonable jury could conclude that Massa's termination was in retaliation for protected conduct which had not yet occurred.

Massa responds by pointing to the texts and conversations after the January 2020 discharge letter, claiming that the termination process "culminated" in the October 2020 offer to settle his open grievances for $250.  Even assuming we agreed with that interpretation—which, to be clear, we don't—Massa still cannot establish the causal-connection element.  Massa states that he

complained to his UPS supervisor shortly after finding out about the denial of his benefits in late January or early February 2020, and he then submitted an application for short-term disability in early April 2020.  But more than six months passed from the latest of these events to the $250 offer in October 2020, which, again, is too long under our precedent to reasonably infer a causal connection. *See Thomas*, 506 F.3d at 1364.  And nothing more than speculation, not reasonable inferences from record evidence, supports Massa's claim that his knee injury provided UPS the "perfect cover" to "allow the termination process to take its course" due to retaliatory animus.

For these reasons, the district court properly granted summary judgment to UPS and the Union on Massa's claims of discrimination and retaliation under the ADA and Title VII.[4]

**AFFIRMED.**

---

[4] Massa does not appear to make any distinct argument about the Union on the merits of his claims for discrimination or retaliation.